**BURSOR & FISHER, P.A.**
Frederick J. Klorczyk III (SBN 320783)
Julian C. Diamond (*pro hac vice* forthcoming)
1330 Avenue of the Americas, 32nd Fl.
New York, New York 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail:  fklorczyk@bursor.com
          jdiamond@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| DANIEL ONN, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>     v.<br><br>PACIFIC COAST PRODUCERS,<br><br>                              Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1    Plaintiff Daniel Onn ("Plaintiff") brings this action on behalf of himself and all others

2    similarly situated against Defendant Pacific Coast Producers ("Defendant").  Plaintiff makes the

3    following allegations pursuant to the investigation of his counsel and based upon information and

4    belief, except as to the allegations specifically pertaining to himself, which are based on his

5    personal knowledge.

6                                        **NATURE OF THE ACTION**

7    1.    Defendant operates the largest tomato canning facility in the United States, and

8    formulates, manufactures, advertises, and/or sells multiple types of canned tomatoes (the

9    "Products")[1] throughout the United States, including in California.   Defendant markets its

10   Products in a systematically misleading manner by misrepresenting that the Products do not contain

11   preservatives.

12   2.    Defendant clearly lists "No Preservatives" on Products' label, capitalizing on the

13   preference of health-conscious consumers to purchase foods that are free from preservatives.

14   However, Defendant's Products contain "citric acid"—a well-known preservative used in food

15   products.

16   3.     As a result of its deceptive conduct, Defendant violates state consumer protection

17   statutes and has been unjustly enriched at the expense of consumers.

18   4.    Plaintiff purchased Defendant's Products and, on behalf of himself and similarly

19   situated purchasers, asserts claims for violations of California Unfair Competition Law, Cal.

20   Business & Professions Code § 17200, *et seq*., for unjust enrichment, and for breach of express

21   warranty.

22                                      **JURISDICTION AND VENUE**

23   5.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

24   1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the

25   proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100

26

27   _____

[1] The Products encompass all of Defendant's canned and packaged produce that are advertised as
containing "No Preservatives" but contain citric acid.

28

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                           1

members of the putative class, and at least one class member is a citizen of a state different than Defendant.

6.      This Court has personal jurisdiction over Defendant Pacific Coast Producers ("Defendant") because Defendant maintains its principal place of business in California.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant Pacific Coast Producers resides in this District.

## PARTIES

8.      Plaintiff Daniel Onn is a citizen of California who resides in Saratoga, California. Mr. Onn has purchased the Products for his personal use at various times during the applicable statute of limitations.  Most recently, in or around October 2023, Mr. Onn purchased a "Summer is Inside" can of tomatoes from a Safeway market in Saratoga, California for approximately $5.  In purchasing the Product, Mr. Onn relied on Defendant's false, misleading, and deceptive marketing of the Product as containing "No Preservatives."  Mr. Onn understood that "No Preservatives" meant that the Product did not contain any preservatives, but in fact the Product he purchased did contain citric acid, a preservative.  Had Mr. Onn known that the "No Preservatives" representation was false and misleading, he would not have purchased the Product or would have only been willing to purchase the Product at a lesser price.

9.      Defendant Pacific Coast Producers is an agricultural cooperative organized under the laws of California with its principal place of business located at 631 N. Cluff Avenue, Lodi, CA 95240.

## GENERAL ALLEGATIONS

**Defendant Misrepresents the Products**

10.      Defendant advertises and displays on the side of each of the Products that it contains "No Preservatives," thereby misleading reasonable consumers into believing that the Products are free from preservatives.  However, the Products contain citric acid, a well-known and well-documented preservative.  Defendant's most recent labeling of the Products, along with their ingredient panels, are depicted on the following page:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19   11.   **Citric Acid is a Preservative.**  The FDA defines a chemical preservative as "any

20   chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not

21   include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to

22   food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or

23   herbicidal properties."  21 C.F.R. §101.22(a)(5).

24   12.   Food preservatives are classified into two main groups: antioxidants and

25   antimicrobials.  Food scientists agree that the chemical properties of citric acid make it a

26   preservative.  Specifically, citric acid is classified as an antioxidant that delays or prevents the

27
28

deterioration of foods by so-called oxidative mechanisms.[2]

13.     In its "Overview of Food Ingredients, Additives & Colors," the FDA lists "citric acid" as a preservative.[3]  The FDA also recognizes that preservatives, like citric acid, are commonly used in foods like the Products.

14.     Under the "What They Do" table heading, the FDA elaborates that preservatives help "prevent food spoilage from bacteria, molds, fungi or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); [and] maintain freshness."[4]

15.     The FDA's classification of citric acid as a preservative is reflected in a warning letter sent to Chiquita Brands International, Inc. and Fresh Express, Inc.  In the letter, the FDA deemed the "Pineapple Bites" and "Pineapple Bites with Coconut" products manufactured by the companies "misbranded within the meaning of Section 403(k) of the [Federal Food and Drug Cosmetic] Act [21 U.S.C. 343(k)] in that they contain the *chemical preservatives ascorbic acid and citric acid* but their labels fail to declare these *preservatives* with a description of their functions. 21 C.F.R. [§] 101.22" (emphases added).[5]

16.     **Antioxidant Properties.**  Citric acid acts as an antioxidant via two processes—inhibiting enzymes and chelating metals.  Certain enzymes naturally exist in food products that oxidize and breakdown the food products' molecules.  Citric acid deactivates these enzymes, thereby functioning as a preservative.[6]  Citric acid also chelates metal ions, which stabilizes and preserves food products by bonding certain molecules in food products to centrally located metal atoms.[7]

---

[2] *Preservatives*, BRITTANICA, https://www.britannica.com/topic/food-additive/Preservatives#ref502211 (accessed February 14, 2023).

[3] *See Overview of Food Ingredients, Additives, and Colors*, U.S. FOOD & DRUG ADMIN. (2018), https://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives- colors#types (accessed February 14, 2023).

[4] *Id.*

[5] *See* October 6, 2010 FDA Warning Letter to Chiquita Brands Int'l, Inc. and Fresh Express, Inc.

[6] *Id.*

[7] P. Davidson et al., *Chapter 20: Antimicrobial Agents*, in FOOD ADDITIVES, at 592 (A. Larry Branen et al. eds., Marcel Dekker, Inc. 2d ed. 2002).

17.  **Antimicrobial Properties.**  Citric acid also has antimicrobial properties and directly inhibits the growth of some bacteria and mold.[8]  This is yet another reason why food scientists classify citric acid as a preservative.[9]

18.  **Subjective Intent of Use is Immaterial.**  Citric acid functions as a preservative in the Products, and this is true regardless of Defendant's subjective purpose or intent for adding it to the Products, such as to impart flavor.[10]

19.  Even if the Products' citric acids do not, in fact, function as a preservative in the Products, they nonetheless qualify as preservatives given that they have the capacity or tendency to do so.  *See* 21 C.F.R. §101.22(a)(5) (defining preservatives as "any chemical that, when added to food, *tends* to prevent or retard deterioration") (emphasis added); *see also* Merriam-Webster's Dictionary (defining "preservative" as "something that preserves or has the power of preserving.");[11] Oxford English Dictionary (defining "preservative" as "[t]ending to preserve or *capable* of preserving") (emphasis added).[12]

20.  **The Products' Citric Acid is Chemically Processed and Poses Risks.**  Citric acid is naturally occurring when derived from certain citrus fruits.  That is not true of the citric acid contained in the products.  The citric acid contained in the Products is commercially produced,

---

[8] L. Su et al., *Study on the Antimicrobial Properties of Citrate-Based Biodegradable Polymers*, FRONTIERS IN BIOENGINEERING AND BIOTECHNOLOGY, 2, 23. https://doi.org/10.3389/fbioe.2014.00023 (accessed June 29, 2023).

[9] *Citric Acid Compound Summary*, NAT'L CTR. FOR BIOTECHNOLOGY INFO., https://pubchem.ncbi.nlm.nih.gov/compound/Citric-acid (accessed February 14, 2023).

[10] *Citric Acid* in KIRK-OTHMER FOOD & FEED TECH., at 262 (John Wiley & Sons, 2007); L. Somogyi, *Chapter 13: Direct Food Additives in Fruit Processing,* in PROCESSING FRUITS: SCI. & TECH., at 302 (D. Barrett et al. eds., CRC Press 2d ed. 2004); M. Abd-Elhady, *Effect of citric acid, calcium lactate and low temperature prefreezing treatment on the quality of frozen strawberry*, 59 ANNALS OF AGRIC. SCIS., 69-75 (2014); J. deMan, *Chapter 11: Additives and Contaminants*, in PRINCIPLES OF FOOD CHEMISTRY, at 438 (AVI Publishing Co., Inc. 3d ed. 1999) ("Acids as food additives serve a dual purpose, as acidulants and as preservatives")

[11] *Preservative*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/preservative?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last accessed November 30, 2022).

[12] *Preservative*, American Heritage Dictionary, https://ahdictionary.com/word/search.html?q=preservative (last accessed November 30, 2022).

manufactured, and the result of extensive chemical processing.[13]  In fact, more than 90 percent of commercially produced citric acid, including the citric acid contained in the Products, is manufactured through a processed derivative of black mold, *Aspergillus niger*, which can cause allergic reactions and diseases in humans.[14]  Negative side effects of consuming manufactured citric acid include: swelling and stiffness resulting in joint pain; muscle pain; stomach pain; and shortness of breath.[15]

21.    **Defendant Exploits Consumer Demand for Preservative-Free Food.**  By representing the Products have "No Preservatives," Defendant seeks to capitalize on consumers' preference for products with no preservatives.  Indeed, "foods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health … 84 percent of American consumers buy free-from foods because they are seeking out more natural or less processed foods.  In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent).  Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent)."[16]

22.    According to another study, when consumers were asked to choose a product that was the closest to their understanding of what "natural" means on product labels, on balance, they chose products with "No Preservatives" labels.[17]

---

[13] A. Hesham, Y. Mostafa & L. Al-Sharqi, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, 48 MYCOBIOLOGY 122, 123 (2020).

[14] *Id.*; I. Sweis & B. Cressey, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series for four case reports*, 5 TOXICOLOGY REPS., 808-12 (2018); R. Ciriminna et al., *Citric Acid: Emerging Applications of Key Biotechnology Industrial Product*, 11 CHEMISTRY CENT. J. 22 (2017), https://doi.org/10.1186/s13065-017-0251-y (accessed February 14, 2023); K. Kirimura, Y. Honda, & T. Hattori, *Citric Acid*, 3 COMPREHENSIVE BIOTECHNOLOGY 135 (2011), https://www.sciencedirect.com/science/article/pii/B9780080885049001690 (accessed February 14, 2023).

[15] *Id.*

[16] *See, Free-From Food Trends-US-May 2015*, MINTEL https://www.mintel.com/press-%20centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed (last accessed November 30, 2022).

[17] Sajida Rahman, et al., Assessing consumers' understanding of the term "Natural" on food labeling, Journal of Food Science, Vol. 85, No. 6, 1891-1896. (2020).

23.     The global sale of healthy food products is estimated to be $4 trillion dollars and is forecasted to reach $7 trillion by 2025.[18]  Based on the foregoing, consumers are willing to purchase and pay a premium for healthy non-preservative food items like the Products.

24.     Defendant's misleading and deceptive practices proximately caused harm to Plaintiff and the proposed class members who suffered an injury in fact and lost money or property as a result of Defendant's deceptive conduct.

**CLASS ACTION ALLEGATIONS**

25.     Plaintiff seeks to represent a class defined as all persons in the United States who during the maximum period of time permitted by law, purchased Defendant's Products primarily for personal, family or household consumption, and not for resale (the "Nationwide Class").

26.     Plaintiff seeks to represent a subclass defined as all Class members who reside in California who purchased the Products (the "California Subclass") (collectively with the Nationwide Class, the "Classes")

27.     Members of the Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class number in the hundreds of thousands.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

28.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to, the true nature and presence of preservatives in the Products; whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive; whether Plaintiff and the members of the Classes have suffered damages as

---

[18] Global Wellness Institute, *The Global Wellness Economy Stands at $4.4 Trillion Amidst the Disruptions of COVID-19; Is Forecast to Reach $7 Trillion by 2025*, https://www.hospitalitynet.org/news/4108643.html (last accessed November 30, 2022).

a result of Defendant's actions and the amount thereof; and whether Plaintiff and the members of the Classes are entitled to attorneys' fees and costs.

29.     The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendant's false and misleading marketing, purchased Defendant's Products, and suffered a loss as a result of those purchases.

30.     Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

31.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## **CAUSES OF ACTION**

### **COUNT I**
**Breach of California Unfair Competition Law,**
**Cal. Business & Professions Code § 17200, et seq (UCL)**
**(On behalf of the Nationwide Class and the California Subclass)**

32.     Plaintiff realleges the foregoing paragraphs and incorporate them as if fully set forth herein.

33.     At all relevant times, the UCL was in full force and effect.

34. The UCL prohibits the use of "any unlawful, unfair or fraudulent business act or practice." (Bus. & Prof. Code §17200).

35. Section 17203 of the UCL empowers the Court to enjoin any conduct that violates the UCL and "make such orders or judgments, including the appointment of a receiver, as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

36. Plaintiff has "suffered injury in fact and has lost money or property as a result of the unfair competition" as complained of herein. Bus & Prof. Code §17204. Plaintiff has paid money for Defendant's products that contained citric acid and were "misbranded." As such, the products could not legally be sold in interstate commerce. The monies that Plaintiff and the class members paid for the products resulted from Defendant's unfair competition, and Plaintiff and the class members are entitled to an order restoring those monies to them and an order enjoining Defendant from selling citric acid containing products under its misleading label. Additionally, even if Defendant's Products could have legally been sold in interstate commerce, Plaintiff overpaid compared to what they would have if the same products did not contain citric acid.

37. Defendant's conduct violated the unfair practices prong of the UCL. Defendant's conduct violates both California and federal public policy, as shown by their respective prohibitions on introducing misbranded products into interstate commerce. The conduct is also anticompetitive and puts competitors who follow the law at a disadvantage. Defendant's conduct suppresses competition and has a negative impact on the marketplace, decreasing consumer choice. Further, Defendant's conduct causes significant aggregate harm to consumers, causing them to overpay.

38. Defendant's violations of the UCL entitle Plaintiff and the class members to injunctive relief and full restitution.

39. Plaintiff and the general public lack an adequate remedy at law to remedy and/or mitigate the totality of the injuries and misconduct described herein.

40. Absent injunctive relief, Defendant will continue to injure Plaintiff and class

members. Defendant's conduct and omissions of material fact are ongoing. And, even if such conduct were to cease, it is behavior that is capable of repetition or reoccurrence by Defendant yet evades review.

**COUNT II**
**Breach of Express Warranty**
**(On behalf of the Nationwide Class and the California Subclass)**

41.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

42.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

43.     Defendant, as the producer, marketer, distributor, and/or seller, expressly warranted that the Products contain no "No Preservatives."

44.     Defendant's representations and warranties were part of the description of the goods and the bargain upon which the Products were offered for sale and purchased by Plaintiff and members of the Classes.

45.     In fact, the Products do not conform to Defendant's representations and warranties because the Products contain citric acid, a well-documented preservative.  By falsely representing the Products in this way, Defendant breached express warranties.

46.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and members of the Classes have been injured and harmed in an amount to be proven at trial because they would not have purchased the Products, or would have paid substantially less for it, had they known it contained a preservative.

47.     On May 31, 2023, prior to filing this action, Defendant was served via certified mail with a pre-suit notice letter on behalf of Plaintiff that complied in all respects with U.C.C. §§ 2-313 and 2-607.  Plaintiff's counsel sent Defendant a letter advising that Defendant breached an express warranty and demanding that Defendant make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff's counsel's letter is attached hereto as **Exhibit 1**.

## COUNT III
**Unjust Enrichment**
**(In the Alternative)**

48.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

49.     Plaintiff brings this claim individually and on behalf of Class members against Defendant.

50.     Plaintiff and Class members conferred benefits on Defendant by paying money to Defendant for the purchase of the Products.

51.     Defendant has knowledge of such benefits.

52.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchase of the Products.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant misrepresented that the Products contain "No Preservatives" when in fact it contains citric acid, a well-documented preservative.

53.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

## COUNT IV
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code §§ 1750, *et seq.***

54.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

55.     Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendant.

56.     This count is brought under the laws of the State of California.

57.     Defendant is a "person," as defined by California Civil Code § 1761(c).

58.     Plaintiff and members of the California Subclass are "consumers," as defined by California Civil Code § 1761(d).

59.     The Products purchased by the Plaintiff and the members of the California Subclass

are "goods" as defined by California Civil Code § 1761(a).

60. The purchases by the Plaintiff and the members of the California Subclass constitute "transactions," as defined by California Civil Code § 1761(e).

61. The unlawful methods, acts or practices alleged herein to have been undertaken by Defendant were all committed intentionally and knowingly. The unlawful methods, acts or practices alleged herein to have been undertaken by Defendant did not result from a *bona fide* error notwithstanding the use of reasonable procedures adopted to avoid such error.

62. Defendant's methods, acts and/or practices, including Defendant's misrepresentations, omissions, active concealment, and/or failures to disclose, violated and continue to violate the CLRA in ways including, but not limited to, the following:

(a) Defendant misrepresented that its products had characteristics, benefits, or uses that they did not have (Cal. Civ. Code § 1770(a)(5));

(b) Defendant misrepresented that its products were of a particular standard, quality, grade, or of a particular style or model when the products were of another (Cal. Civ. Code § 1770(a)(7));

(c) Defendant advertised its products with an intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9)); and

(d) Defendant represented that its products were supplied in accordance with previous representations when they were not (Cal. Civ. Code § 1770(a)(16)).

63. Specifically, Defendant advertised and represented that the Products were suitable for the particular purpose when in fact the Products contained Preservatives even though they were represented as containing "No Preservatives."

64. With respect to omissions, Defendant at all relevant times had a duty to disclose the information in question because, *inter alia*: (a) Defendant had exclusive knowledge of material information that was not known to Plaintiff and the California Subclass; (b) Defendant concealed material information from Plaintiff and the California Subclass; and/or (c) Defendant made partial representations which were false and misleading absent the omitted information.

65. Defendant's misrepresentations and nondisclosures deceive and have a tendency and ability to deceive the general public.

66.    Defendant's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions. Indeed, the utility and value of Defendant's Products are significantly reduced because of Defendant's misrepresentations.

67.    As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent conduct, Plaintiff and the California Subclass suffered injury-in-fact and lost money.

68.    But for Defendant's deceptive conduct and omissions of material facts, Plaintiff and the California Subclass would not have purchased the Products and/or would have purchased tomatoes from one of Defendant's competitors instead. Defendant's conduct as alleged herein caused substantial injury to Plaintiff, California Subclass Members, and the public. Defendant's conduct is ongoing and will continue and recur absent a permanent injunction. Accordingly, Plaintiff and the California Subclass seek an order enjoining Defendant from committing such practices.

69.    If not enjoined by order of this Court, Defendant is free to resume its unlawful behavior and injure Plaintiff and consumers through the misconduct alleged herein once more. Defendant has a duty to speak truthfully or in a non-misleading manner.

70.    Plaintiff will be harmed if, in the future, he is left to guess as to whether Defendant's representations are accurate and whether there are omissions of material facts regarding the features or specifications of the Products.

71.    In order to prevent injury to the general public, Plaintiff, in his individual capacity, seeks a public injunction requiring Defendant to stop advertising, and to instruct its resellers to stop advertising, any Product that contains citric acid as containing "No Preservatives."

72.    The balance of the equities favors the entry of permanent injunctive relief against Defendant. Plaintiff and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendant. Plaintiff and the general public lack an adequate remedy at law. A permanent injunction against Defendant is in the public interest. Defendant's unlawful behavior is capable of repetition or re-occurrence absent the entry of a permanent

injunction.

73.     On May 31, 2023, prior to the filing of this Complaint, Plaintiff's counsel sent Defendant a CLRA notice letter, which complies in all respects with California Civil Code § 1782(a).  The letter also provided notice of breach of express and implied warranties.  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of Plaintiff and all other similarly situated purchasers.  Defendant failed to correct its business practices or provide the requested relief within 30 days.  Accordingly, Plaintiff and the California Subclass now also seek monetary damages under the CLRA.  A true and correct copy of the letter is attached hereto as **Exhibit 1**.

74.     With regard to this count of the pleading which alleges one or more violations of the CLRA, venue is proper in the state or federal court having jurisdiction over Santa Clara County, California (the county in which this action has been commenced) pursuant to Section 1780(d) of the California Civil Code because, without limitation, Santa Clara County is a county in which Defendant is doing business and is the county in which a substantial portion of the events that gave rise to this cause of action occurred and Plaintiff resides in this county.  A declaration establishing that this Court has proper venue for this count is attached hereto as **Exhibit 2**.

## COUNT V
### Violation of California's False Advertising Law
### California Business and Professions Code §§ 17500, *et seq.*

75.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

76.     Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendant.

77.     This count is brought under the laws of the State of California.

78.     Defendant has engaged in false or misleading advertising in violation of California's statutory False Advertising Law ("FAL").

1    79.    Defendant's conduct as described herein is misleading, and/or has a capacity,

2  likelihood or tendency to deceive reasonable consumers.

3    80.    Defendant, with intent directly or indirectly to dispose of personal property or to

4  perform services, or to induce the public to enter into any obligation relating thereto, makes,

5  disseminates, has made or disseminated, causes to be made or disseminated, and/or has caused to

6  be made or disseminated, before the public in California, in newspaper or other publication, or

7  other advertising device, or by public outcry or by proclamation, or in any other manner or means,

8  including over the internet, statements concerning that personal property or those services, and/or

9  concerning any circumstance or matter of fact connected with the proposed performance or

10  disposition thereof, which are untrue or misleading and which are known (or which by the exercise

11  of reasonable care should be known) to be untrue or misleading.

12    81.    Defendant made, disseminated, makes, disseminates, caused to be made or

13  disseminated and/or causes to be made or disseminated any statements concerning the disposition

14  of personal property or the performance of services, and/or concerning any circumstance or matter

15  of fact connected with such statement as part of a plan or scheme with the intent not to sell that

16  personal property or those services, professional or otherwise, as advertised.

17    82.    With respect to omissions, Defendant at all relevant times had a duty to disclose the

18  information in question because, *inter alia*: (a) Defendant had exclusive knowledge of material

19  information that was not known to Plaintiff and the California Subclass; (b) Defendant concealed

20  material information from Plaintiff and the California Subclass; and/or (c) Defendant made partial

21  representations which were false and misleading absent the omitted information.

22    83.    Defendant committed such violations of the FAL with actual knowledge that its

23  advertising was misleading, or Defendant, in the exercise of reasonable care, should have known

24  that its advertising was misleading.

25    84.    Plaintiff and the California Subclass reasonably relied on Defendant's

26  representations and/or omissions made in violation of the FAL.

27    85.    As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent

28

1   conduct, Plaintiff and each member of the California Subclass suffered injury-in-fact and lost

2   money.

3         86.     But for Defendant's deceptive conduct and omissions of material facts, Plaintiff and

4   the California Subclass would not have purchased the Products and/or would have purchased

5   tomatoes from one of Defendant's competitors instead.

6         87.     Defendant should be ordered to disgorge or make restitution of all monies

7   improperly accepted, received, or retained.

8         88.     Defendant's conduct has caused substantial injury to Plaintiff, members of the

9   California Subclass, and the public. Defendant's conduct is ongoing and will continue and recur

10   absent a permanent injunction.  Accordingly, Plaintiff seeks an order enjoining Defendant from

11   committing such violations of the FAL.  Plaintiff further seeks an order granting restitution to

12   Plaintiff and the California Subclass in an amount to be proven at trial.  Plaintiff further seeks an

13   award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

14         89.     Plaintiff, on behalf of himself and the California Subclass, seeks injunctive relief to

15   require Defendant to: (1) provide notice to every class member that the Products he purchased are

16   not suited for its intended purpose; and (2) either provide a refund to Plaintiff and the California

17   Subclass for their Products in an amount to be determined at trial.

18         90.     Absent injunctive relief, Defendant will continue to injure Plaintiff and the

19   California Subclass members. Even if such conduct were to cease, it is behavior that is capable of

20   repetition or reoccurrence by Defendant yet evades review.

21         91.     In order to prevent injury to the general public, Plaintiff, in his individual capacity,

22   seeks a public injunction requiring Defendant to stop advertising, and to instruct its resellers to stop

23   advertising, any Product that contains citric acid as containing "No Preservatives."

24         92.     Plaintiff and the general public lack an adequate remedy at law to remedy and/or

25   mitigate the totality of the injuries and misconduct described herein.

26

27

28

1

## **PRAYER FOR RELIEF**

2      WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, seek

3 judgment against Defendant, as follows:

4      (a)   For an order certifying the Nationwide Class and the California Subclass under Rule
            23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the
5            Nationwide Class and the California Subclass, and naming Plaintiff's attorneys as
            Class Counsel to represent the Nationwide Class and California Subclass;
6

7      (b)   For an order finding in favor of Plaintiff and the Classes on all counts asserted
            herein;

8      (c)   For an order finding in favor of Plaintiff, the Nationwide Class, and the California
            Subclass on all counts asserted herein;
9

10     (d)   For compensatory, statutory, and punitive damages in amounts to be determined by
            the Court and/or jury;
11

12     (e)   For prejudgment interest on all amounts awarded;

13     (f)   For an order of restitution and all other forms of equitable monetary relief;

14     (g)   For an order enjoining Defendant from continuing the illegal practices detailed
            herein and compelling Defendant to undertake a corrective advertising campaign;
15            and

16     (h)   For an order awarding Plaintiff and the California Class their reasonable attorneys'
            fees and expenses and costs of suit.

17

## **DEMAND FOR TRIAL BY JURY**

18     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any

19 and all issues in this action so triable as of right.

20

21 Dated:  July 14, 2023                    Respectfully submitted,

22                                           **BURSOR & FISHER, P.A.**

23

24                                           By:   _/s/ Frederick J. Klorczyk III_
                                                   Frederick J. Klorczyk III
25

26                                           Frederick J. Klorczyk III (SBN 320783)
                                             Julian C. Diamond (*pro hac vice* forthcoming)
27                                           1330 Avenue of the Americas, 32nd Fl.
                                             New York, New York 10019
28

Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail:  fklorczyk@bursor.com
          jdiamond@bursor.com

*Attorneys for Plaintiff*

**EXHIBIT 1**

# BURSOR & FISHER
### P.A.

1330 Avenue of the Americas
NEW YORK, NY 10019
www.bursor.com

FREDERICK J. KLORCZYK III
Tel: 646.837.7150
Fax: 212.989.9163
fklorczyk@bursor.com

May 15, 2023

*<u>Via Certified Mail – Return Receipt Requested</u>*

Pacific Coast Producers
631 N. Cluff Avenue
Lodi, CA 95240

Pacific Coast Producers
c/o Becky Degeorge
2710 Gateway Oaks Drive
Sacramento, CA

Re:     *Notice and Demand Letter Pursuant the California Consumers Legal Remedies Act,
California Civil Code §§ 1750 et seq., and all other relevant state and local laws*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by Pacific Coast Producers ("You" or "Defendant") pursuant to numerous provisions of California and federal law, including but not limited to the California Consumers Legal Remedies Act, California Civil Code §§ 1750 *et seq.*, on behalf of our client, Vishal Shah, and all other similarly situated purchasers of Your Products that falsely claim to contain "No Preservatives." This letter also serves as notice pursuant to California Civil Code § 1782, and U.C.C. § 2-607(3)(A).

You have participated in the marketing and sale of "Summer is Inside Tomatoes" (the "Product"). The Product's labeling represents that it contains "No Preservatives." This representation is false and misleading because the Product contains citric acid. Citric acid is recognized by the U.S. Food and Drug Administration to be a preservative.[1] By representing that the Product contains "No Preservatives," You are misleading consumers into believing that they are purchasing a food that is free of preservatives.

Mr. Shah purchased the Product from a Whole Foods Market in California in or around April 2023. Mr. Shah purchased the Products based on the Product's representations, reasonably believing that the Product did not contain any preservatives. However, the Product he purchased does in fact, contain a preservative—citric acid. Mr. Shah would not have purchased the Product, or would have paid significantly less for the Product, had he known it contained a preservative.

---

[1] https://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors

Mr. Shah is acting on behalf of a class defined as all persons in the United States who purchased the Products.  Mr. Shah is also acting on behalf of a subclass of persons who purchased the Product in the State of California.

To cure these defects, we demand that you make full restitution to all purchasers of the Products of all money obtained from sales thereof.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.      All documents concerning the sourcing, production, and/or testing of the Products;

2.      All documents concerning the advertisement, labeling, marketing, or sale of the Products;

3.      All documents concerning communications with purchasers of the Products, including but not limited to customer complaints; and

4.      All documents concerning your total revenue derived from sales of the Product in California and the United States.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

Please contact me right away if you wish to discuss an appropriate way to remedy this matter.  If I do not hear from you promptly, I will take that as an indication that you are not interested in doing so.

Very truly yours,

Frederick J. Klorczyk III

**EXHIBIT 2**

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, Frederick J. Klorczyk III, declare as follows:

      1.      I am counsel for Plaintiff, and I am a partner at Bursor & Fisher, P.A.  I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

      2.      The complaint filed in this action is filed in the proper place for trial under California Civil Code Section 1780(d) because a substantial part of the events or omissions giving rise to these claims occurred in this District.

      3.      Plaintiff Daniel Onn alleges that in or about October 2022, he purchased a "Summer is Inside" can of tomatoes from a Safeway market in Saratoga, California for approximately $5 which is in this district.  *See* Compl. ¶ 8.  Plaintiff further alleges that in purchasing the Product, Mr. Onn relied on Defendant's false, misleading, and deceptive marketing of the Product as containing "No Preservatives." *Id.*  Mr. Onn understood that "No Preservatives" meant that the Product did not contain any preservatives, but in fact the Product he purchased did contain citric acid, a preservative.  *Id.*  Had Mr. Onn known that the "No Preservatives" representation was false and misleading, he would not have purchased the Product or would have only been willing to purchase the Product at a lesser price.

      I declare under the penalty of perjury under the laws of the United States and the State of New York that the foregoing is true and correct.  Executed on July 14, 2023 in New York, NY.

                                             *<u>/s/ Frederick J. Klorczyk III</u>*
                                             Frederick J. Klorczyk III